## Commonwealth v. Rudolph

*John J. Dempsey, Jr.*, for Commonwealth.
*Donald S. Mills*, for appellant.

PINOLA, J., August 3, 1951.—This is an appeal by Leonard D. Rudolph from the suspension of his driver's license for a period of 90 days.

Leo Perwein, a member of the Pennsylvania State Police, testified that on June 17, 1950, at about 4:10 p.m., Eastern Daylight Saving Time, he followed an Oldsmobile car being driven by appellant for about a mile in Westfall Township, Pike County, north of Milford Borough, and clocked him for a distance of one mile at a speed of 65 miles per hour.

The testimony leaves us under a doubt.

Appellant insists that he was not speeding, that at no time did he exceed 50 or 51 miles per hour. He had passed the State Police car in Dingman Township,

south of Milford Borough, and so was fully aware of the fact that State policemen were behind him. The officer admits that appellant told him of such knowledge immediately.

Mr. Perwein claims that he was alone in the car; appellant insists that there were two troopers in the car. He is corroborated by his wife. Appellant is positive that the officer who stopped him was not wearing glasses. Mr. Perwein, on the other hand, insists that he wears glasses at all times and was wearing them on the date of the arrest. Appellant insists that the voice of Mr. Perwein is not that of the officer who stopped him.

Mr. Perwein admitted that he first observed appellant's car passing a car ahead of him and that he was only going 35 miles per hour. He decided to follow him because appellant "seemed to be pushing it right at that point." How one can describe the operation as "pushing it pretty good" when the car is being driven at but 35 miles per hour, we cannot understand. This requires more of an explanation than that given by the officer.

Later, he gave as his reason for trailing appellant "the ease with which he pulled out of line and passed each car." Why should able driving cause the officer to follow the driver?

As soon as he passed the cars appellant drove to the right side of the road. Furthermore, Perwein admits that when he stopped appellant, the latter was slowing down. Everything that appellant was doing, according to Perwein, was proper, except the speeding. Perhaps he did drive 65 miles for a short distance, but appellant insists that he was observing the law and particularly he knew at all times that the troopers were following him. In fact, he discussed the presence of the officers

with the passengers in his car after he passed them. Under these circumstances, it is most unlikely that appellant would be traveling at an excessive rate of speed.

We have known Mr. Rudolph for many years and we have a high regard for his integrity and veracity. We have no reason to disbelieve him. Besides, he has an exceptional record as a driver for over 30 years. Such a person, we feel, is entitled to the benefit of the doubt.

Counsel for appellant objected to the introduction in evidence of the certificate of examination of the speedometer of the police car because: (1) The test given is not an accurate test, and (2) the statute (Act of May 1, 1929, as amended, P. L. 905, 75 PS §501) permitting the introduction in evidence of such a certificate is unconstitutional in that it denies appellant the right to cross-examine the person who made the test.

We now hold that the certificate is admissible and we admit it in evidence because we are satisfied for the reasons given by Henninger, P. J., in Appeal of Davis, 20 Lehigh 284, that the statute is not unconstitutional.

The conclusion which we have reached makes it unnecessary to consider the objection that the test was inaccurate. We appreciate, as pointed out by appellant, that the speed of the car is affected by the number of passengers in the car, the air in the tires, the size of the tires and the gears ratio. And we are aware of the fact that factories make allowances of between 5 percent and 10 percent when speedometers are tested prior to shipment of cars. However, since we do not have before us the result of any test of the speedometer on appellant's car, we cannot reach a proper conclusion on this aspect of the case. Accepting appellant's testimony, the most that the police car speedometer

could vary would be 10 percent of 65 miles or 6½ miles, which would leave the speed of the appellant's car 58½ miles per hour. The proposition is very interesting and perhaps some day the record will be such as to permit a proper deduction.

From all the evidence, we find that appellant was not exceeding the speed limit, and, therefore, we enter the following

### Order

Now, August 3, 1951, the appeal is sustained and the order of the Secretary of Revenue is set aside.